**In the Matter of the 1990 RENEWAL APPLICATION OF SDDS, INC.**

**No. 18055.**

Supreme Court of South Dakota.

Considered on Briefs on April 19, 1993.

Decided Nov. 3, 1993.

Rehearing Denied Dec. 9, 1993.

Marvin D. Truhe, Dale R. Cockrell of Marvin D. Truhe Law Offices, Rapid City, for appellant SDDS, Inc.

Mark F. Marshall, Patrick K. Duffy of Bangs, McCullen, Butler, Foye and Simmons, Rapid City, for appellee Technical Information Project.

Mark Barnett, Atty. Gen., Charles D. McGuigan, Asst. Atty. Gen., Pierre, for appellee S.D. Dept. of Environment and Natural Resources.

HENDERSON, Justice.

*PROCEDURAL HISTORY/ISSUES*

South Dakota Disposal Systems, Inc. (SDDS), in the continuing saga of the Lonetree waste disposal facility, appeals the Seventh Judicial Circuit's holding that SDDS' waste disposal permit was revoked by *Matter of SDDS, Inc.,* 472 N.W.2d 502 (S.D.1991) (*SDDS I* ).[1]

On appeal filed September 4, 1992, SDDS raises these issues:

I. Did *SDDS I* revoke SDDS' one-year permit of September 1989? We hold that the permit was invalid.

II. If the permit was revoked, what effect does the revocation have on SDDS' five-year permit of December 1990? The permit is void *ab initio.*

We affirm the trial court.

*FACTS*

In September 1989, the South Dakota Board of Minerals and Environment (Board) granted SDDS a one-year permit to construct and operate a municipal solid waste (MSW) disposal facility near the city of Edgemont in Fall River County, South Dakota. As intervener, Technical Information Project (TIP) challenged the permit's issuance, but Judge Tice of the Seventh Judicial Circuit affirmed the Board's decision. Thereafter, TIP appealed to this Court.

Meanwhile, on November 6, 1990, South Dakota voters passed Initiative Measure No.

---

1. For further details concerning procedure and facts, *see SDDS I; SDDS, Inc. v. State,* 481 N.W.2d 270 (S.D.1992) (*SDDS II* ); and *SDDS, Inc. v. State,* 502 N.W.2d 852 (S.D.1993) (*SDDS III*).

1, mandating legislative approval of the siting, construction, and operation of all large-scale waste disposal facilities. (This is codified at SDCL 34A–6–53 through 34A–6–56.) Despite the election requiring legislative approval, the Board renewed SDDS' permit for another five years.

During the 1991 Legislative Session, in compliance with the Initiative, the state Senate passed Senate Bill 169 (SB 169) declaring the facility to be environmentally safe and in the public interest. However, in May 1991, the Surface Mining Initiative Fund submitted a petition to refer SB 169 to the general public for a Referendum on the November 3, 1992 ballot. This placed Senate Bill 169 in limbo and shut down the facility pending the outcome of the general election.

As the Board, Legislature, and voters were debating the future of the facility, this Court was reviewing TIP's appeal concerning the one-year permit. On June 26, 1991, *SDDS I* was decided which affirmed in part, reversed in part, and remanded the action. In the meantime, TIP also appealed to the Seventh Judicial Circuit the Board's decision to renew the one-year permit for an additional five years. Upon review of *SDDS I*, the Seventh Judicial Circuit interpreted *SDDS I* to hold that the one-year permit had not been revoked, and thereafter ruled the five-year permit was not revoked.

In September 1991, after the Board conducted a remand hearing on the one-year permit pursuant to the *SDDS I*, TIP appealed again. However, before a memorandum opinion was issued, this Court handed down *SDDS, Inc. v. State of South Dakota*, 481 N.W.2d 270 (S.D.1992) (*SDDS II* ), which held SB 169 could not go into effect until after the November 3, 1992, referendum election.[2] Based on *SDDS II*, Judge Davis, of the Seventh Judicial Circuit, found that the one-year permit had indeed been revoked by *SDDS I*, and remanded the issue back to the Board.

When the Board refused to take further action until a definitive ruling regarding the validity of the one-year permit was made, SDDS filed requests for a discretionary appeal and an expedited appeal. TIP and the State also joined in these requests. Following our denial of the request, the circuit court ruled on July 14, 1992, that when the renewal permit was granted—six months prior to *SDDS I*—no valid one-year permit existed upon which to renew. Therefore, it reasoned the five-year permit was void *ab initio*. We agree.

## DECISION

### I. *The One–Year Permit was Invalid.*

■ "This controversy involves the validity of the Board's original decision to issue a solid waste permit to SDDS." Such were the words of the third sentence of *SDDS I. SDDS I* at 504.

In the third issue of that case, we sought to determine if the facility was in the public interest of the entire state. *SDDS I* at 512–13. Via SDCL 34A–6–1.13, "no solid waste permit may be issued in a contested case unless the Board finds that to do so is in the public interest. We noted that findings of fact must be accompanied by a concise and explicit statement of the underlying facts supporting the findings. SDCL 1–26–25; *SDDS I* at 512; *Lemke v. Rabenberg's, Inc.*, 89 S.D. 386, 233 N.W.2d 336 (1975). "However, the Board did not incorporate ... anything upon which we can discern the underlying basis for its public interest finding." *SDDS I* at 512. Because no findings of fact existed to support public interest, we had no basis upon which to conduct a review and could not reach the merits of TIP's argument. Though we did not specifically reverse the trial court's affirmance of the permit, we also did not approve of the issuance. One thing is absolute: Without proof of public interest, no permit could have been properly issued. SDCL 34A–6–1.13.

This is why we remanded the case—to obtain the findings of fact that would allow for such a permit. No proof of public interest, then no permit. That is the status of the law and *SDDS I*.

Granted, we did not specifically revoke or invalidate the permit; however, the permit's

**2.** On November 3, 1992, South Dakota voters rejected "Referred Law 1" (SB 169).

status with this Court is not under lock and key. Three separate writings reveal the intent of this Court's meaning in *SDDS I*.

In *SDDS I* at 515 (Henderson, J., concurring in part, dissenting in part), Justice Henderson stated, "Although I agree in the result of the opinion written by Justice Amundson, in reversing the approval of the permit ..."

On page 271 in *SDDS II*, Chief Justice Miller inserted the following footnote in the majority writing: "This court, in [*SDDS I*], reversed the Department of Water and Natural Resources which had granted the first permit to SDDS." Albeit, the Department may not have issued the permit, and thus, the incorrect administrative agency was named, nonetheless, the footnote clearly intended to indicate that the permit was invalid.

Finally, in *SDDS II* at 273 (Amundson, J., concurring in result), Justice Amundson wrote that SDDS' permit had not been properly granted by the Board as held in *SDDS I*, which he authored.

Three Justices who voted in *SDDS I* have held that the permit was not properly issued. Using the logic of SDDS' brief, because neither Justice Wuest nor Justice Sabers wrote to the contrary, they apparently did not disagree with the view of the other three Justices. In fact, neither dissented to the footnote in *SDDS II*. The bottom line is we found that the permit lacked the requisite statutory public interest support, and remanded the case for SDDS to prove such support. We have yet to see such a finding (unquestionably because two special elections in this state have shown that the public disapproves of the waste site) and therefore, the permit cannot be said to have ever been valid.

## II. *The Five–Year Permit was Void Ab Initio.*

■ We held in Issue I, as we held in *SDDS I*, that the first permit lacked validity. *SDDS I* was handed down June 26, 1991—six months after the Board renewed the original permit for five years. Because the original permit, in effect, did not legally exist, there was no permit to renew. Therefore, the five-year permit was void *ab initio*.

Affirmed.

MILLER, C.J., and WUEST, J., concur.

AMUNDSON, J., concurs specially.

SABERS, J., dissents.

AMUNDSON, Justice (concurring specially).

The majority is now agreeing that SDDS was never in possession of a validly issued permit. For the reasons set forth in my special writing in *SDDS v. State*, 481 N.W.2d 270, 273 (S.D.1992), I join this opinion, since it is now obvious to this court that SDDS has not possessed a validly issued waste disposal permit at any time during which *SDDS I* or *SDDS II* were weaving their way through the court system.

SABERS, Justice (dissenting).

I dissent.

I believe that the one-year permit was remanded, not revoked or canceled. *SDDS I*, 472 N.W.2d at 512–13.

> Our review is limited to whether the agency's findings are supported by adequate evidence. Without adequate findings of fact, we have no basis upon which to conduct our review, and we cannot reach the merits of TIP's argument that the evidence presented at the hearing was insufficient to support the public interest finding. We must remand on this issue for entry of appropriate findings, based on the record before Board at the hearing, in accordance with this decision.

*Id.* at 513 (citation omitted). Therefore, the one-year permit was a proper basis for issuance of a five-year renewal permit even while on appeal. It remains a proper basis, subject only to a final granting of said one-year permit by the Board on remand. *See* SDCL 34A–6–1.13; SDCL 34A–6–1.16.